IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALEXANDRIA GREGG Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>      vs.<br><br>THE STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, et al.,<br><br>              Defendants.<br><br>_____ | CIV. NO. 14-00056 JMS-KSC<br><br>ORDER (1) GRANTING DEFENDANTS STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, TED SAKAI IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAII, AND NEAL WAGATSUMA, IN HIS OFFICIAL CAPACITY AS WARDEN OF THE KAUAI COMMUNITY CORRECTIONAL CENTER, DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAII, IN HIS INDIVIDUAL CAPACITY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, DOC. NO. 19; AND (2) GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, DOC. NO. 27 |

## ORDER (1) GRANTING DEFENDANTS STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, TED SAKAI IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAII, AND NEAL WAGATSUMA, IN HIS OFFICIAL CAPACITY AS WARDEN OF THE KAUAI COMMUNITY CORRECTIONAL CENTER, DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAII, IN HIS INDIVIDUAL CAPACITY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, DOC. NO. 19; AND (2) GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, DOC. NO. 27

# I.  **INTRODUCTION**

On January 31, 2014, Plaintiff Alexandria Gregg ("Plaintiff"),
individually and on behalf of all others similarly situated, brought this civil rights
class action against Defendants State of Hawaii, Department of Public Safety
("DPS"); Ted Sakai in his official capacity as Director of DPS ("Sakai"); and Neal
Wagatsuma ("Wagatsuma") in both his individual and official capacity as Warden
of the Kauai Community Correctional Center ("KCCC").  Plaintiff alleges that
while she was incarcerated at KCCC in March 2011 and June to November 2011,
she experienced cruel and unusual punishment and other unlawful treatment when
Wagatsuma subjected Plaintiff and others similarly situated to harassment, sexual
psychological humiliation, and public sexual degradation.

Currently before the court are (1) DPS, Sakai, and Wagatsuma in his
official capacity's (collectively "State Defendants") Motion to Dismiss Plaintiff's
First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Doc. No. 19,
and (2) Wagatsuma, in his individual capacity's Motion for Judgment on the
Pleadings, Doc. No. 27.  State Defendants argue that the Eleventh Amendment bars
certain aspects of Plaintiff's claims, and all Defendants argue that Plaintiff's claims
are barred by the statute of limitations.  Based on the following, the court

GRANTS the Motions and dismisses Plaintiff's First Amended Complaint

("FAC"), without leave for Plaintiff to amend.

## II. <u>BACKGROUND</u>

### A. **Factual Background**

Plaintiff's claims are based on events that occurred while she was

detained at KCCC during various periods from March to November 2011. *See*

Doc. No. 7, FAC ¶ 8.

#### 1. *March 2011 Incarceration at KCCC*

When Plaintiff was first detained at KCCC in March 2011, she was

placed in the Life Time Stand ("LTS") housing, where conditions are less

restrictive for detainees. *Id.* ¶ 18. While in custody, Plaintiff asserts that

Wagatsuma repeatedly forced her and other female inmates to stand at a podium

and speak about their private, intimate, and traumatizing sexual experiences. *Id.*

¶ 19. During these sessions, Wagatsuma asked Plaintiff questions such as whether

she had sex while on drugs, how many sexual partners she had, whether she had

been raped, and the circumstances of her rape. *Id.* Wagatsuma also allowed male

detainees to question and harass Plaintiff and other class members, and Plaintiff

felt pressured and forced into answering improper questions. *Id.* ¶ 21. Wagatsuma

had male detainees videotape these sessions, which would then be shown to KCCC's detainee population.  *Id.* ¶ 19.

After Plaintiff was released from KCCC on March 28, 2011, she requested that Wagatsuma return the videotapes documenting Plaintiff's statements.  *Id.* ¶ 24.  In response, Wagatsuma refused, asserting that they were destroyed.  *Id.*

### 2.   *June to November 2011 Incarceration KCCC*

Plaintiff returned to KCCC in June 2011, when she was pregnant. *Id.* ¶¶ 25-26.  Plaintiff asserts that Wagatsuma became upset when he learned the identity of the father, and placed Plaintiff in KCCC's regular module units instead of LTS housing.  *Id.* ¶¶ 26-27.  It was not until Plaintiff's child was born in September 2011 and she began pumping breast milk that Wagatsuma transferred Plaintiff to LTS housing.  *Id.* ¶ 28.

While Plaintiff was in LTS housing, Wagatsuma allegedly resumed his public questioning of Plaintiff regarding her private sexual matters.  *Id.* ¶ 29. During these sessions in which male detainees and KCCC staff were present, Wagatsuma would ask Plaintiff, for example, how many males in the group Plaintiff slept with and would call her a "batuna," a local slang word for a woman who engages in sex for drugs.  *Id.*  Wagatsuma subsequently transferred Plaintiff

4

back to the regular module units when he learned that she had stopped pumping breast milk, and Plaintiff became severely depressed. *Id.* ¶¶ 30-31.

Plaintiff asserts that "[s]ometime in November of 2011, Plaintiff could not tolerate Wagatsuma's continued harassment, sexual psychological humiliation, and improper treatment." *Id.* ¶ 32. As a result, Plaintiff requested and was granted a transfer to federal custody at the Federal Detention Center ("FDC") in Honolulu. *Id.* Plaintiff was detained at the FDC from November 2011 until her release on May 15, 2012. *Id.* ¶ 33.

**B.   Procedural Background**

Plaintiff filed this action on January 31, 2014, and filed her FAC on March 21, 2014. Doc. No. 7. The FAC asserts claims titled (1) Cruel and Unusual Punishment Under the Eighth Amendment of the United States Constitution; (2) Violations of Due Process of Law Under the Fifth and Fourteenth Amendments of the United States Constitution; (3) Failure of the State of Hawaii to Properly Oversee and Supervise Mental Health Treatment/Services at KCCC; (4) Violations of the Right to Freedom of Speech Under the First and Fourteenth Amendments of the United States Constitution (incorrectly labeled as a second "Third Claim for Relief"); (5) Violation of Equal Protection Under the Fourteenth Amendment of the United States Constitution; (6) Violation of 42 U.S.C. Section 1983; and

(7) Violations of Hawaii State Constitution.

On May 1, 2014, State Defendants filed their Motion to Dismiss. Doc. No. 19. On May 20, 2014, Wagatsuma filed his Motion for Judgment on the Pleadings. Doc. No. 27. Plaintiff filed an Opposition to the Motion to Dismiss on June 9, 2014, Doc. No. 29, and an Opposition to the Motion for Judgment on the Pleadings on June 16, 2014. Doc. No. 36. Replies were filed on June 16 and 2014. Doc. Nos. 35, 37. Pursuant to the court's July 1, 2014 Entering Order, Doc. No. 38, Defendants filed a Supplemental Memorandum on July 2, 2014. Doc. No. 39. A hearing was held on July 7, 2014.

On July 8, 2014, a status conference was held in which the parties agreed for the court to hold in abeyance its determination on the Motions to allow Plaintiff forty-five days to seek leave to amend the FAC. *See* Doc. No. 42. In an August 18, 2014 letter, Plaintiff's counsel notified the court that she would not be filing a motion seeking to name a replacement class representative such that the Motions are ripe for adjudication. Doc. No. 44.

### III. <u>STANDARDS OF REVIEW</u>

**A.    Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction. The court may

determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case." *Kingman ReefAtoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation marks omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

**B.     Rules 12(b)(6) and 12(c)**

Rule 12(b)(6) motions are virtually identical to Rule 12(c) motions, with the only practical difference being the time of filing, and the court therefore applies the same standard of review to both motions. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review). Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]" Similarly, in considering a Rule 12(c) motion for judgment on the pleadings, the court must accept as true all factual allegations

in the complaint, and construe them in the light most favorable to the non-moving party. *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009).

To survive either of these motions, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken

as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. ANALYSIS

Defendants argue that Plaintiff's claims against the DPS and Sakai and Wagatsuma in their official capacities are barred by the Eleventh Amendment, and that Plaintiff's claims are otherwise barred by the statute of limitations.[1] The court addresses each argument in turn.

### A. Eleventh Amendment Immunity

State Defendants argue that Plaintiff's claims against them are barred by the Eleventh Amendment. The court agrees in part.

"It is clear, . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the

---

[1] State Defendants also include in their Motion a one-sentence statement, without any legal support, that "Plaintiff's Sixth Claim for Relief must be dismissed for the additional reason that there is no 1st, 4th, 8th or 14th Amendment to the Hawaii State Constitution." Doc. No. 19-1, State Defs.' Mot. at 2. And in their Reply, State Defendants further argue that Plaintiff cannot assert a violation of Hawaii state law, including the Hawaii State Constitution. Doc. No. 35, State Defs.' Reply at 13. Because State Defendants did not properly present and/or support these arguments, the court will not address them.

Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id*.; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (holding that suit against the State and its Board of Corrections is barred by the Eleventh Amendment absent consent); *see also Durning v. Citibank*, 950 F.2d 1419, 1422-23 (9th Cir. 1991) (noting that the Eleventh Amendment bars "federal courts from deciding virtually any case in which a state or the 'arm of a state' is a defendant").

The Eleventh Amendment does not, however, bar suits seeking prospective injunctive relief against state officers sued in their official capacities. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Pena v. Gardener*, 976 F.2d 469, 472 (9th Cir. 1992). Nor does the Eleventh Amendment bar suits for violations of federal law against state officials sued in their individual capacities for damages. *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974).

Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839 (9th Cir. 1997). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491

U.S. at 71 (citations omitted). Eleventh Amendment immunity is therefore consistent with the general rule that "states or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839 (citing *Will*, 491 U.S. at 71).

The State of Hawaii has not waived its immunity to suit in federal court, and the DPS is an agency of the State and not considered a "person" under § 1983. Thus, Plaintiff's claims against the DPS are barred by the Eleventh Amendment and are DISMISSED. The Eleventh Amendment does not, however, preclude Plaintiff's claims for prospective injunctive relief against Sakai and Wagatsuma to the extent they are sued in their official capacities, or Plaintiff's claims for damages against Wagatsuma in his individual capacity.[2] *See Coeur d'Alene Tribe of Idaho*, 521 U.S. at 269; *Hafer v. Melo*, 502 U.S. 21, 27, 31(1991) (stating that suits against state officials in their official capacity should be treated

---

[2] In reply, State Defendants argue that the injunctive and declaratory relief aspects of Plaintiff's claims are not cognizable. *See* Doc. No. 35, State Defs.' Reply at 12. The court will not consider substantive arguments raised for the first time in a Reply. *See, e.g.*, *Hi-Tech Rockfall Const., Inc. v. Cnty. of Maui*, 2009 WL 529096, at *18 n.9 (D. Haw. Feb. 26, 2009) ("Local Rule 7.4 provides that '[a]ny arguments raised for the first time in the reply shall be disregarded.'"); *Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n. 16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

as suits against the State). The court therefore proceeds to address Defendants' remaining arguments for dismissal as to these Defendants.

## B.    Statute of Limitations

To determine whether Plaintiff's claims are barred by the statue of limitations, the court first outlines the applicable legal framework and then addresses Plaintiff's claims.

### 1.    *Framework*

In § 1983 actions, courts apply the forum state's statute of limitations and its tolling provisions for personal injury actions. *See Canatella v. Van de Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007). As a result, Plaintiff's § 1983 claims are subject to the two-year statute of limitations set forth in Hawaii Revised Statutes ("HRS") § 657-7, which provides that "[a]ctions for recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after . . . ."[3]

---

[3] State Defendants argue that the applicable statute of limitations for claims against them is provided in HRS § 662-4, which provides that, except for an irrelevant exception, "[a] tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues." As described above, Plaintiff's claims against the State are barred by the Eleventh Amendment immunity. And to the extent HRS § 662-4 would apply to Sakai and Wagatsuma in their official capacities (an issue the court need not decide), it would not affect the analysis -- both statutes provide a limitations period of two years, Hawaii's tolling provisions do not apply to this case, and federal law still applies in determining accrual. Indeed, at the July 7, 2014 hearing, the parties agreed that regardless of the particular applicable statute, a two-year statute of limitations applies.

Although the court looks to state law to determine the applicable statute of limitations, when a cause of action begins to accrue is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."). Under federal law, "[t]he touchstone for determining the commencement of the limitations period is notice: 'a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) (quoting *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 319 (9th Cir. 1991)); *see also Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). Implicit in this standard is that "[t]he plaintiff must be diligent in discovering the critical facts." *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999). Thus, "a plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations, if he should have known in the exercise of due diligence." *Id.* (citing *Herrera-Diaz v. United States*, 845 F.2d 1534, 1537 (9th Cir. 1988)); *United States v. Kubrick*, 444 U.S. 111, 122 (1979) (explaining that the statute of limitations begins to run only upon a plaintiff's knowledge "of the critical facts that he has been hurt and who has inflicted the injury").

In general, "what [a plaintiff] knew and when [he] knew it are questions of fact." *Bibeau*, 188 F.3d at 1108 (quoting *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986)). A claim may be dismissed under Rule 12 as "barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)); *see also Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." (quotations and citations omitted)).[4]

## 2.     *Application*

All of Plaintiff's claims are for injuries she allegedly sustained from her incarceration at KCCC, which ended in November 2011. Specifically, Plaintiff alleges: (1) an Eighth Amendment claim that Defendant's actions during Plaintiff's incarceration at KCCC constitute cruel and unusual punishment, Doc. No. 7, FAC ¶¶ 65-71; (2) a claim that Plaintiff was subjected to illegal "mental health"

---

[4] Although *Twombly* "retired" the "no set of facts standard," the Ninth Circuit continues to use the "no set of facts" formulation post-*Twombly* in the statute of limitations context. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

practices and treatment while at KCCC without due process of law, *id.* ¶¶ 73-75; (3) a claim that the State failed to oversee and supervise Plaintiff's mental health treatment and services at KCCC, *id.* ¶¶ 77-82; (4) a First Amendment claim that she was retaliated against while at KCCC for reporting the misconduct at KCCC, *id.* ¶¶ 84-86; and (5) an equal protection claim and violations of the Hawaii State Constitution based on the events she experienced at KCCC. *Id.* ¶¶ 88-95. Because Plaintiff brought this action on January 31, 2014 -- *i.e.*, over two years after she was transferred from KCCC to FDC and after she was subjected to this alleged misconduct -- it appears that Plaintiff's claims are time-barred unless the FAC alleges facts providing a basis to toll the statute of limitations or suggesting that her claims accrued sometime after she left KCCC.

       *a.*    *Tolling*

       Plaintiff's incarceration at FDC from November 2011 until May 15, 2012 does not toll the statute of limitations. Although HRS § 657-13(1) tolls the statute of limitations for imprisonment for certain cases, it does not apply where such action is brought against "the sheriff, chief of police, or other officers." The DPS and its officers fall within this exclusion -- HRS § 26-14.6(f), the statute creating the DPS, states that the "functions, authority, and obligations, . . . and the privileges and immunities conferred thereby, exercised by a 'sheriff' . . . shall be

exercised to the same extent by the department of public safety." In other words, any statute that applies to the sheriff, chief of police, or other officers, conferring either duties or immunities upon them, or, as in this case, exempting them from application of a statute, applies equally to the DPS and its employees. As a result, Plaintiff's § 1983 claims are not tolled by HRS § 657-13. *See Coles v. Eagle*, 2014 WL 2214046, at *4 (D. Haw. May 27, 2014) ("This district court has ruled that, pursuant to the 'sheriff' exception, § 657-13 tolling does not apply to the State of Hawaiʻi Department of Public Safety or its employees." (citations omitted)); *see also Rodenhurst v. Hawaii*, 2010 WL 1783568, at *3 (D. Haw. Apr. 29, 2010) (citing *Samonte v. Sandin*, 2007 WL 461311, at *4 (D. Haw. Feb. 07, 2007) (determining that § 657-13 does not apply to the DPS)).

> b.    *Accrual*

Nor does the FAC include any allegations suggesting that Plaintiff did not know or have reason to know of her claims until some time after she left KCCC. Rather, the FAC makes plain that Plaintiff was well aware of her claims at the time of her incarceration at KCCC. In particular, Plaintiff asserts that Wagatsuma subjected her to a series of events constituting "harassment, sexual psychological humiliation, and public sexual degradation." Doc. No. 7, FAC ¶ 2. According to Plaintiff, these events made her feel "humiliated, embarrassed, and

violated," *id.* ¶ 22, and she became severely depressed when Wagatsuma transferred her from the LTS housing to the regular housing during her second period of incarceration at KCCC. *Id.* ¶ 31. That these events caused injury to Plaintiff at the time of her incarceration and that Plaintiff was aware of such injury is made clear by the fact that in November 2011, she "could not tolerate [Wagastuma's] continued harassment, sexual psychological humiliation, and improper treatment," and therefore requested a transfer to FDC. *Id.* ¶ 32. And although the FAC asserts that "Plaintiff finds it difficult to think and talk about her degrading sexual experiences at KCCC," *id.* ¶ 34, such fact does not suggest she was not aware of her injuries. Thus, from the face of the FAC, it is apparent that the statute of limitations has run and Plaintiff's claims are untimely.

   In opposition, Plaintiff presents the declarations of herself and her therapist, Ms. Fran Tyson Marchino, to assert that Plaintiff "did not receive any therapy or psychological counseling related to her experiences from KCCC and the DPS while in custody and remained unaware of her injuries until early 2014." Doc. No. 29, Pl.'s Opp'n at 14. Plaintiff further asserts that Marchino "continues to help Plaintiff understand and appreciate the extent and nature of the psychological damage" that Defendants caused. *Id.*; *see also* Doc. No. 29-2, Marchino Decl. ¶ 14 (asserting that Plaintiff is still understanding the scope and

depth of her condition, and their therapy sessions have yielded breakthroughs in which Plaintiff "is just now recognizing the harm and damage that was caused while incarcerated").

These new facts are not alleged in the FAC and are therefore irrelevant in determining whether the FAC alleges timely claims. The court therefore GRANTS the Motion to Dismiss and the Motion for Judgment on the Pleadings.

## C.    Leave to Amend as to Plaintiff

Although the court may not consider facts outside those alleged in the FAC in determining Defendants' Motions to Dismiss and for Judgment on the Pleadings, the court may consider these facts in deciding whether to grant Plaintiff leave to amend.[5] *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.") (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001) ("Where counsel is able to posit possible amendments that would be consistent with the

---

[5]  At the July 7, 2014 hearing, the parties agreed that the court should consider the Declarations as proffers of evidence for the purpose of determining whether leave to amend should be granted, as opposed to converting the Motions to Motions for Summary Judgment.

operative complaint and could also possibly state a claim for relief, the complaint should not be dismissed on its face with prejudice.")).  Where potential amendment would be futile, the court need not provide a plaintiff the opportunity to amend. *See Mirmehdi v. United States*, 662 F.3d 1073, 1082 (9th Cir. 2011) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile."); *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1043 (9th Cir. 2011) ("[L]eave to amend would be futile because the plaintiffs cannot state a plausible basis for relief.").

Plaintiff's additional facts fail to suggest that her claims accrued sometime after she left KCCC.  Although Plaintiff asserts in conclusory fashion that "I remained unaware of my injuries until well after my release [from FDC] in May of 2012," Doc. No. 29-1 Pl.'s Decl. ¶ 18, this statement runs directly contrary to the other specific statements in her Declaration as well as the FAC suggesting both that Plaintiff was injured and that she was aware of such injury during her incarceration at KCCC.  *See Orion Tire Corp.*, 268 F.3d at 1137-38; *see also Telesaurus VPC LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts *consistent* with the challenged pleading could not possibly cure the deficiency . . . .'" (emphasis added) (citation omitted)).

In particular, Plaintiff's assertion that she was unaware of her injuries is directly contradicted by the specific facts alleged that (1) Plaintiff became severely depressed when Wagatsuma transferred Plaintiff from the LTS housing to the regular housing during her second period of incarceration at KCCC, Doc. No. 7, FAC ¶ 31; (2) Plaintiff requested a transfer to FDC because she "could not tolerate Wagatsuma's continued harassment, sexual psychological humiliation, and improper treatment," Doc. No. 29-1, Pl.'s Decl. ¶ 16; and (3) while Plaintiff was detained at FDC, she "continued to remain fearful of retaliation by Wagatsuma and the DPS so [she] did not make any complaints regarding Wagatsuma while in custody." *Id.* ¶ 17. Thus, according to Plaintiff's own statements, she was aware of Wagatsuma's conduct and that the conduct caused her injury. And in light of these specific statements establishing that Plaintiff was injured during her incarceration at KCCC and that she was aware that she was injured, her conclusory assertion that she was unaware of her injuries is insufficient to raise a question as to when her claims accrued. *See also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345

(9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).

At most, Plaintiff's evidence suggests that she may not have comprehended the *scope* of her injuries while incarcerated at KCCC. But Plaintiff's awareness that she suffered *some* injury from Defendants is sufficient to trigger Plaintiff's duty to investigate her claims. As the Supreme Court explains:

> "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526-527 (1991) (footnote omitted); *see also* 54 C.J.S., Limitations of Actions § 112, p. 150 (2005). Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

*Wallace*, 127 S. Ct. at 1097; *see, e.g.*, *Wosotowsky v. Metlife Ins. Co.*, 2013 WL 1703874, at *2 (W.D. Pa. Apr. 19, 2013) (determining that claims were untimely and explaining: "[t]hat he did not know of the magnitude of the injury or the extent of the amount of restitution is of no significance under Pennsylvania's discovery rule"); *Murthy v. Abbott Labs.*, 847 F. Supp. 2d 958, 979 (S.D. Tex. 2012) ("The discovery rule does not toll statute of limitations when 'some injury is known but the full extent of injury and cause are unknown.'" (citation omitted)).

As a result, Plaintiff's claims accrued when she was aware that she suffered injury from Defendants, and the fact that it was not until later that Plaintiff was formally diagnosed and/or that she learned the full extent of injury does not make the accrual date a moving target. *See, e.g.*, *Kraft v. St. John Lutheran Church of Seward, Neb.*, 414 F.3d 943, 947 (8th Cir. 2005) (rejecting that statute of limitations was tolled until plaintiff obtained therapy because prior to that time, the plaintiff "drew a direct connection between the abuse and his negative behaviors in 1990"); *Pitts v. Blue Ridge Sav. Bank of Greer*, 2007 WL 1485909, at *3 (D.S.C. May 17, 2007) (rejecting plaintiff's argument that he did not discover his claim until he was diagnosed with PTSD because "the fact that the injured party may not at that time comprehend the full extent of the damage is immaterial" (citations omitted)); *Yruegas v. Vestal*, 356 F. Supp. 2d 1238, 1243 (D.N.M. 2004) (rejecting argument that claim did not accrue until the plaintiff "discovered in counseling that her emotional injuries were the result of the teacher's sexual abuse" where evidence established that the plaintiff "knew or should have known of the facts that would support the constitutional claims she now asserts").

In opposition, Plaintiff asserts that the court should follow *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986), to find that the statute of limitations

did not begin until she obtained therapy with Tyson Marchino. *See* Doc. No. 36, Pl.'s Opp'n at 12-14. *Simmons*, however, presents very different facts.

In *Simmons*, the plaintiff brought suit against the government under the FTCA for injuries she sustained when her Indian health service counselor wrongfully engaged her in a seemingly consensual sexual relationship which lasted from 1978 to 1980. *Id.* at 1364. It was not until February 1983 that the plaintiff learned that her counselor's misconduct was the cause of her recent psychological problems. *Id.* Prior to that time, the plaintiff had "no idea" that her emotional condition was caused by the counselor's conduct. *Id.* at 1367. As a result, *Simmons* held that the plaintiff's cause of action did not accrue during her relationship with the counselor, but rather when she learned for the first time that the counselor's conduct caused her emotional injury. *Id.* at 1368. *Simmons* reasoned that these facts established that "[i]t was not knowledge of [the counselor's] legal fault that [the plaintiff] gained in 1983, but knowledge of the fact that his mishandling of her normal transference had caused her psychological damage." *Id.* at 1367.[6]

_____

[6] Similar to *Simmons*, other cases have held that a claim does not accrue where the factual basis for the cause of action is "inherently unknowable" at the time of the injury -- *i.e.*, that "the factual basis is 'incapable of detection by the wronged party through exercise of reasonable diligence." *Ramirez-Carlo v. United States*, 496 F.3d 41, 46 (1st Cir. 2007) (quoting *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002)); *see also William A. Graham Co.*
x
x

x
(continued...)

23

Although at the July 7, 2014 hearing Plaintiff's counsel asserted that Defendants' unlawful acts were taken under the guise of "therapy," unlike in *Simmons*, the allegations of the FAC make plain that Plaintiff was aware that Wagatsuma's actions were wrongful and that they caused her injury during her incarceration at KCCC. As a result, even if Plaintiff did not understand the full scope of her injuries, her claims accrued at that time. *See also K.E.S. v. United States*, 38 F.3d 1027, 1030 (8th Cir. 1994), *holding modified in other part by Garza v. U.S. Bureau of Prisons*, 284 F.3d 930 (8th Cir. 2002) (distinguishing *Simmons* where the plaintiff testified that she knew the defendant's sex abuse caused her contemporaneous physical and emotional injury); *Sell v. U.S. Dep't of Justice*, 585 F.3d 407, 410 & 410 n.2 (8th Cir. 2009) (rejecting that *Simmons* applied where the plaintiff was aware of his injuries and their cause, and explaining that "[a] government-induced illness tolls the statute only if it prevents discovery of the nature and cause of the injury. If the illness does not prevent discovery, the government's negligence will not do so on its own."); *Reed v. Barnes*, 986 F.2d 1428 (10th Cir. 1993) (determining that *Simmons* and similar cases did not apply and that the statute of limitations ran where "[t]he alleged sexual abuse of which

---

[6](...continued)
*v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011); *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009).

plaintiff accuses the defendant did not occur while plaintiff was a child when it could be assumed that plaintiff would be unaware of the wrongful character of the behavior or powerless to stop it").

The court therefore GRANTS State Defendants' Motion to Dismiss, and Wagatsuma in his individual capacity's Motion for Judgment on the Pleadings. And because Plaintiff's additional allegations contained in her Opposition provide no basis to find that this action is timely, this dismissal is without leave to amend as to Plaintiff.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS State Defendants' Motion to Dismiss, Doc. No. 19; and GRANTS Wagatsuma, in his individual

///

///

///

///

///

///

///

///

capacity's Motion for Judgment on the Pleadings. Because this dismissal is

without leave to amend, the court directs the Clerk's Office to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 18, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Gregg v. State of Hawaii, Dep't of Public Safety, et al.*, Civ. No. 14-00056 JMS-KSC, Order
(1) Granting Defendants State of Hawaii, Department of Public Safety, Ted Sakai in His Official
Capacity as Director of the Department of Public Safety, State of Hawaii, and Neal Wagatsuma,
in His Individual Capacity as Warden of the Kauai Community Correctional Center, Department
of Public Safety, State of Hawaii, in His Official Capacity's Motion to Dismiss First Amended
Complaint, Doc. No. 19; and (2) Granting Motion for Judgment on the Pleadings, Doc. No. 27

26