BRONSTER FUJICHAKU ROBBINS
A Law Corporation

MARGERY S. BRONSTER          4750
ROBERT M. HATCH             7724
ANTHONY "T.J." QUAN         7903
1003 Bishop Street, Suite 2300
Honolulu, Hawai'i 96813
Telephone No.: (808) 524-5644
Facsimile No.:  (808) 599-1881
mbronster@bfrhawaii.com
rhatch@bfrhawaii.com
aquan@bfrhawaii.com

DECOSTA HEMPEY
Attorneys at Law LLC
DANIEL G. HEMPEY           7535

4028 Rice Street, Suite B
Lihue, Hawai'i 96766
Telephone No.: (808) 632-2444
Facsimile No.:  (808) 632-2332

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ALEXANDRIA GREGG Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>      vs.<br><br>THE STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY; NOLANDA ESPINDA,in his official capacity as Director of the Department of Public Safety, State of Hawaii, and in his individual capacity; and NEAL WAGATSUMA, in his official capacity as Warden of the Kauai Community Correctional Center, Department of Public Safety, State of Hawaii, and in his individual capacity,<br><br>            Defendants. | CIVIL NO. 14-00056 JMS-KSC (Class Action)<br><br>SECOND AMENDED CLASS ACTION COMPLAINT |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and all others similarly situated, alleges and avers as follows:

## INTRODUCTION

1.     Plaintiff brings this action to remedy severe abuses, wrongdoings, and harms resulting from the acts and omissions perpetrated by Defendants against female prisoners in custodial detention at the Kauai Community Correctional Center ("KCCC"), Department of Public Safety, State of Hawai'i.

2.     Plaintiff and the Class members are female individuals currently and/or previously detained in KCCC and who were subjected to harassment, sexual psychological humiliation, and public sexual degradation at the hands of KCCC's Warden, Defendant Neal Wagatsuma, who claims his actions and practices against the female Detainees to be "proper mental health treatment" and "therapy."  Despite repeated reports and complaints of Defendant Wagatsuma's wrongdoing from Plaintiff, Class members, and KCCC employees, Defendants failed to take any appropriate action to remedy these abuses and turned a deaf ear to the injuries and suffering of KCCC's female Detainees.

3.     Defendants' actions and omissions against Plaintiff and the Class members were and are in violation of the Federal and State Constitutions, and Federal and State law.

## JURISDICTION AND VENUE

4.   This Court has original jurisdiction over this action and all the Defendants pursuant to 28 U.S.C. § 1331 and § 1343.  Plaintiff and the Class members seek declaratory relief pursuant to 28 U.S.C. § 2201.

5.   This action is brought as a class action under Fed. R. Civ. P. 23.

6.   This Court has supplemental jurisdiction over Plaintiff and the Class members' state law claims under 28 U.S.C. § 1367.

7.   Venue is appropriate under 28 U.S.C. § 1391(b) because the Defendants reside in this District and all of the acts and omissions that give rise to the claims asserted in this Complaint occurred in this District.

## PARTIES

8.   Plaintiff ALEXANDRIA GREGG (aka Alexandria Gregg-Tangalin, aka Alexandria Tangalin) ("Plaintiff") is a female individual who was detained at the Kauai Community Correctional Center

("KCCC") at various periods from March to November of 2011. Plaintiff, in November 2011, subsequently requested and was granted a transfer to the Federal Detention Center ("FDC") in Honolulu, Hawaiʻi.  Plaintiff continued her incarceration in the FDC until her release from custody in May of 2012.

9.   Plaintiff is and at all times mentioned herein was a female resident of the County of Kauai, State of Hawaiʻi.

10.  Defendant STATE OF HAWAIʻI, DEPARTMENT OF PUBLIC SAFETY ("Defendant State and/or DPS") is the State and the state agency responsible for overseeing the operation and management of the Kauai Community Correctional Center ("KCCC").  Defendant State owns and operates KCCC, and as such, has the responsibility for the conditions and adequate provision of mental health services provided in custody at KCCC.  DPS further establishes the policies, procedures, and practices for the operation of KCCC.

11.   Defendant NOLAND ESPINDA ("Defendant Espinda") is the Director of the State of Hawaiʻi Department of Public Safety ("DPS") and is sued in his official capacity and individually.

12.   Defendant NEAL WAGATSUMA ("Defendant Wagatsuma"), is the Warden of KCCC and is responsible for KCCC's management

4

and day-to-day operations. Defendant Wagatsuma is sued in his official capacity and individually.

13.   KCCC is a custodial detention facility operated by the State and DPS primarily to house pre-trial detainees, though some convicted inmates are also housed at KCCC (collectively, "Detainees").

14.   At all times relevant to this Complaint, unless otherwise stated herein, Defendant Wagatsuma was acting within the course and scope of his employment with the State of Hawaiʻi.

## **GENERAL ALLEGATIONS**

15.   Plaintiff and the Class members are victims of Defendants' continued patterns and/or practices of behavior and conduct that have compromised the well-being and constitutional and other legal rights of female Detainees at KCCC.   Defendants have, among other things, harassed and sexually humiliated female Detainees, failed to provide constitutionally adequate and proper mental health treatment to female Detainees, and have unfairly discriminated against female Detainees based on gender in, amongst other things, failing to provide work furlough opportunities and other related services that are made available to male Detainees.

16.   Upon information and belief, Plaintiff and other Class members were subjected to a pattern of sexual psychological humiliation, invasion of privacy, and psychological violence perpetrated by Defendants, which in turn, resulted in psychological and physical injury.

17.   While in custody at KCCC during approximate periods between early to late 2011, Plaintiff and other female prisoners were repeatedly subjected to a form of "shame therapy" by Defendant Wagatsuma, an admitted pornography addict.

18.   When Plaintiff was first detained at the KCCC in March 2011, she was placed in the KCCC's Life Time Stand ("LTS") housing where conditions were less restrictive for Detainees.

19.   During open public meetings of male and female Detainees and in front of KCCC staff members, Defendant Wagatsuma, as part of this "shame therapy" repeatedly forced Plaintiff and other Class members to stand at a podium and speak about their private, intimate, and traumatizing sexual experiences.   For example, Defendant Wagatsuma asked Plaintiff what kind of drugs she used, whether she had sex while on drugs, and how many partners Plaintiff previously had sex relations with.   Defendant Wagatsuma also asked

Plaintiff whether she had been raped, ordered her to elaborate on previous incidents of rape, and further instructed her to identify the individuals who had raped her.

20.   At meetings that were open to both male Detainees and the public in general, Defendant Wagatsuma would display photographs or videos of female Detainees.  Members of the public were also permitted to confront the Detainees.

21.   Defendant Wagatsuma would order male Detainees to videotape the open meetings that included the sexual humiliation of Plaintiff and other Class members.  Defendant Wagatsuma would then show the videotapes publicly to the rest of the KCCC's Detainee population.

22.   Plaintiff and others similarly situated were oftentimes forced to stand at the podium during these public sexual shamings for up to forty five minutes in front of the LTS' male Detainee population and KCCC's male staff members.  Defendant Wagatsuma would yell at female Detainees to compel participation in these public shamings.

23.   Defendant Wagatsuma would also allow male Detainees to question and harass Plaintiff and other Class members about

their private sex lives during the public sexual shamings.  For example, during one public session, a male Detainee asked Plaintiff whether she had anal sex and if she enjoyed anal sex.  Defendant Wagatsuma did nothing to stop the male Detainee's sexual harassment of Plaintiff.  Feeling pressured and embarassed, Plaintiff was forced into answering the male Detainee's improper questions in the presence of other male Detainees and KCCC staff members.

24.   As a result of Defendant Wagatsuma's public sexual degradation of Plaintiff during these open meetings, Plaintiff felt humiliated, embarassed, and violated. Plaintiff, however, believed her feelings of emotional discomfort were part of the process of talking about difficult aspects of her life (including her past experiences of sexual trauma) through Defendant Wagatsuma's "shame therapy".  Thus, Plaintiff was unable to recognize that she was pyschologically injured while incarcerated at KCCC.

25.   Upon information and belief, Defendant Wagatsuma forced multiple similarly situated female Detainees to engage in the same and/or similar sexual discussions in front of male Detainees and KCCC staff members.  Defendant Wagatsuma did not ask the

same private sexual questions nor seek the same comments from male Detainees.

26.   While Plaintiff was free from custodial detention at KCCC on or about the period of March 29, 2011 to June 13, 2011, Plaintiff called Defendant Wagatsuma asking for the return of the videotapes that documented Plaintiff's statements of her private sexual experiences.   Defendant Wagatsuma refused Plaintiff's requests and claimed that the videotapes had been destroyed.

27.   On or about March 28 2011, Plaintiff was released from KCCC, however, within months of her release, on or about June 14, 2011, Plaintiff was sent back to KCCC for further custodial detention.

28.   When Plaintiff returned to KCCC, she was pregnant. Upon her return, Defendant Wagatsuma engaged in further illegal acts of hostility and harassment towards Plaintiff because he was upset with Plaintiff upon learning the identity of Plaintiff's child's father.

29.   Accordingly, Defendant Wagatsuma placed Plaintiff in the KCCC's regular module units instead of the LTS housing where

conditions were less restrictive and more comfortable for pregnant female Detainees.

30. Defendant Wagatsuma kept Plaintiff in the KCCC's regular module units for a substantial amount of time until her child was born September of 2011 and she began pumping breast milk. At that point, Defendant Wagatsuma was required to transfer Plaintiff to the LTS housing.

31. While Plaintiff was housed at the LTS, Defendant Wagatsuma further subjected Plaintiff to his "shame therapy" sessions, questioning and pressuring her to discuss private sexual matters again. For example, in front of male Detainees, Defendant Wagatsuma would ask how many males in the group Plaintiff had slept with and Defendant Wagatsuma would call Plaintiff a "batuna," a local slang word referencing women who engaged in sex for drugs. Plaintiff also witnessed Defendant Wagatsuma belittle and degrade other female Detainees by calling them "whore" and "batuna" in the presence of male Detainees and KCCC staff.

32. When Defendant Wagatsuma learned that Plaintiff contracted mastitis and stopped pumping breast milk, he had

Plaintiff immediately moved back to the harsher conditions of KCCC's module units.

33.   Plaintiff continued to feel the emotional discomfort connected with Defendant Wagatsuma's "shame therapy" sessions and further, from being  transferred back to the KCCC modules from the less restrictive LTS housing.

34.   Sometime in November of 2011, Plaintiff requested a transfer from State custody to Federal custody at the Federal Detention Center ("FDC") in Honolulu, which was subsequently approved.

35.   Plaintiff was detained at the FDC from November 2011 until May 15, 2012, when she was released.

36.   At the time Plaintiff was released, she was not aware that her participation in LTS caused her to incur a psychological illness.

37.   After her release from incarceration in May 2012, Plaintiff returned to Kauai and attempted to regain her life in society.

38.   Plaintiff attempted to find employment and housing, and consulted various therapists in the community who could assist her with processing her experiences during her incarceration at KCCC.

39.    Sometime in the later part of 2012, Plaintiff met with a former therapist at KCCC, who encouraged her to seek psychological treatment to help her process her experiences while incarcerated at KCCC. Based on these discussions, Plaintiff was motivated to seek professional pyschological treatment.

40.    In early 2014, Plaintiff first sought treatment by a professional therapist, Fran Tyson-Marchino.  She was diagnosed for the first time with an adjustment-like post traumatic stress disorder with delayed onset symptoms.  Ms. Marchino found that the extent of Plaintiff's psychological damages related to Defendant Wagatsuma's actions cannot yet be determined and that additional diagnoses are possible.

41.    Plaintiff is psychologically, emotionally, and physically traumatized by Defendant Wagatsuma's acts and omissions against her.  Plaintiff finds it difficult to think and talk about her degrading sexual experiences at the KCCC.

42.    Upon information and belief, Defendant Wagatsuma subjected similarly situated female Detainees and members of the Class to the same and/or similar treatment, conditions, and sexual degredations that Plaintiff suffered.

43.    Defendant Wagatsuma's public sexual shamings of female Detainees at KCCC involved a myriad of improper, intolerable, and illegals acts which Defendant Wagatsuma claimed as therapy, counseling, and mental health treatment for the female Detainees.   Defendant Wagatsuma, however, lacks any qualifications, credentials, or licenses to conduct this claimed "therapy."  Defendants do not have any data or information to support the efficacy or appropriateness of the LTS program and have never conducted any studies to determine recidivism rates for participants.

44.    During LTS program meetings, Defendant Wagatsuma belittled and derided female Detainees in front of male Detainees and required the female Detainees to hold up provocative, sexual photographs of themselves as he called them "whores."  During these public sessions, Defendant Wagatsuma would demand that female Detainees disclose their private sexual histories, which included rape, childhood sexual abuse, sexual encounters with the male detainees present, and drug-induced sex.  Defendant Wagatsuma would go further and extensively question the female Detainees about their sexual histories, sexual preferences, sexual

13

deviations, and sexual pleasures.  For example, female Detainees were asked about what they thought about when they masturbated.

45.   Defendant Wagatsuma would often film these public sexual shamings.  Typically, the Detainees selected for filming were young attractive women.

46.   If a Detainee refused to follow Defendant Wagatsuma's order to degrade themselves sexually, he would deem the Detainee uncooperative. Defendant Wagatsuma retaliated against these "uncooperative" Detainees by ordering them to refrain from speaking, sending them back to the more restrictive and punitive KCCC modules, transferring them to another correctional facility, or withholding other privileges.

47.   Defendant Wagatsuma also read letters about uncooperative female Detainees.  Upon information and belief, the letters contained personal health information, such as details of mental health conditions.

48.   Defendant Wagatsuma's public exhibitions and sexual humiliations of female Detainees also involved the screening of a lengthy rape scene from a film entitled "Irreversible" that depicted the anal rape at knife-point of a young woman.  Defendant

Wagatsuma exhibited the movie "Irreversible" due to its reputation of having an extremely graphic rape scene.  The rape scene from "Irreversible" may be found at www.joblo.com/videos/movie-clips/irreversible-rape.  Following the anal rape, the rapist kicks, punches, and pounds the rape victim's head into the cement floor until she loses conciousness.  The film is very realistic and includes graphic, violent images of the young female weeping and screaming as she is raped.  Well-known film critic Roger Ebert called Irreversible "a movie so violent and cruel that most people will find it unwatchable."  This rape-film screening severely traumatized Plaintiff and the other Class member female Detainees.

49.   Defendant Wagatsuma purchased and exhibited other movies that portrayed sexual violence against women.  After showing movies portraying the rape and murder of women, Defendant Wagatsuma lectured female Detainees about the dangers of casual sexual encounters.

50.   Defendant Wagatsuma would also force female Detainees to write and submit detailed descriptions of traumatic sexual and physical molestations endured in childhood or adolescence. These

intimate sexual disclosures were then posted in an open book for other Detainees and DPS employees to read.

51.   Many of the female Detainees subjected to Defendant Wagatsuma's sexual wrongdoings consequently suffered from various mental infirmities, illnesses, and injuries.

52.   Defendant Wagatsuma's public sexual interrogationsand video-tape screenings served no legitimate penological mental health purpose and, rather, were abusive and detrimental to the mental health of the female Detainees.

53.   Upon information and belief, female Detainees were also subjected to unequal treatment in their opportunities and privileges at KCCC.   For example, the work furlough program of the Life Time Stand ("LTS") housing section at KCCC was limited by gender to men.   The vast majority of women in the LTS program were not given the same opportunity for work furlough as men.

54.   Defendant Wagatsuma prevented unmarried female Detainees in furlough programs from accessing family planning materials.   Specifically, Defendant Wagatsuma prevented unmarried female Detainees in furlough programs to access birth control as

Defendant Wagatsuma determined unmarried female furlough participants should not be permitted to engage in sexual activities.

55.   Upon information and belief, female Detainees and the other Class members complained and reported Defendant Wagatsuma's illegal practices and the illegal and unconstitutional conditions at KCCC to other KCCC employees; however, many of the KCCC employees/supervisors ignored these complaints for fear of retaliation by Defendant Wagatsuma.

56.   Upon information and belief, former employees of the KCCC have made verbal and written reports to KCCC supervisors, senior DPS officials, and other State officials regarding Defendant Wagatsuma's wrongful conduct.  These reports included complaints of female Detainees' constitutional and other legal rights being violated, and perceptions that KCCC was violating State and Federal law, and among other things, providing inadequate and unconstitutional psychological "treatment" to female Detainees.

57.   In response to these complaints, Defendant Wagatsuma has, in turn, retaliated against former employees by, among other things, initiating pretextual and meritless investigations against former employees, interfering with former employees' abilities to

perform necessary job functions, and manipulating jail lockdowns for the purpose of intercepting privileged documents between employees and female Detainees.

58.   Despite repeated reports and complaints regarding Defendant Wagatsuma's conduct against KCCC's female Detainees, Defendants State and Espinda have failed to take any corrective action against Defendant Wagatsuma.  They have further failed in their obligation to redress the harms suffered by Plaintiff, the Class members, and other female Detainees of the KCCC.

59.   Defendants' system for the reporting and investigating of sexual and psychological misconduct at KCCC is grossly inadequate. It relies almost completely upon female Detainees coming forward to report misconduct, but they are oftentimes deterred for fear of retaliation.  The system additionally fails to utilize reasonable and available investigative tools; it is biased; and it fails to take appropriate action against perpetrators if and when female Detainees do come forward. The effect of this system is to allow sexual psychological misconduct, harassment, and illegal practices of unconstitutionally inadequate mental health treatment

18

by KCCC staff, including Defendant Wagatsuma, to continue

virtually unabated.

60.    Defendants know that women prisoners are unlikely to

come forward with complaints of sexual psychogical abuse by

Defendant Wagatsuma and/or KCCC staff. Specifically, the

Defendants know that:

    a.    Victims of the abuse, in general, and women in
custodial detention in particular, are unlikely to come forward with
complaints of such misconduct, due to the embarrassment,
humiliation, and fear that such complaints will be greeted with
skepticism.

    b.    The persons to whom such complaints are to be
made are colleagues of the perpetrator(s) of the abuse, placing the
victim at risk of retaliation; where complaints of such abuse are not
maintained in a confidential fashion; and where there is a well-
founded belief by female Detainees that such complaints will be
greeted with skepticism, and will not result in any action against
the perpetrator(s).

    c.    Female Detainees who are subjected to physical,
mental, or sexual abuse prior to their incarceration, particularly
those who complained to no avail, may face difficult psychological
and emotional obstacles in complaining of sexual psychological
misconduct while in custodial detention.  These women are unlikely
to come forward with such complaints while incarcerated.

61.    As such, Defendants are aware that, given the fear and

reluctance of female Detainees, maintaining a complaint and

investigative system that relies primarily on female Detainees

coming forward with complaints of sexual psychological abuse and

harassment against a detention facility warden is insufficient to prevent and remedy employee misconduct, particularly when much of the misconduct is committed by the facility's warden as was the case with Defendant Wagatsuma.  The Defendants' system is grossly inadequate and Defendants, in turn, have shown a reckless disregard and a deliberate indifference to the legal and constitutional rights of the Plaintiff and the Class members.

## CLASS ACTION ALLEGATIONS

62.   This action is properly brought as a plaintiff class action pursuant to Fed. R. Civ. P. 23(b)(3).  Plaintiff brings this action on her own behalf and on behalf of all others similarly situated, as representative of the following  proposed Class and Sub-Class:

63.   All female individuals currently and/or previously detained at the Kauai Community Correctional Center at any time within five years prior to the filing of the Complaint and until this lawsuit is resolved.

64.   All female individuals with mental health injuries, infirmities, illnesses, and disabilities currently and/or previously detained at the Kauai Community Correctional Center at any time

within five years prior to the filing of the Complaint and until this lawsuit is resolved.

65.   Excluded from the Class and/or Sub-Class are any individuals who opt out of the Class and/or Sub-Class.

66.   The particular members of the Class and Sub-Class are capable of being described without difficult managerial or administrative problems.  The members of the Class and Sub-Class are readily identifiable from the information and records in the possession or control of the Defendants.

67.   The Class and Sub-Class members are so numerous that individual joinder of all members is impractical.  These allegations are based upon information and belief that there are over one hundred female Detainees at any one time confined in the KCCC, who are subjected to the risk and/or reality of sexual psychological abuse, harassment, and other forms of illegal discrimination based on gender by Defendant Wagatsuma.  On information and belief, repeated complaints of sexual harassment and psychological abuse at KCCC are filed each year.  Many incidents go unreported.

68.   There are questions of law and fact common to the Class and the Sub-Class, which questions predominate over any

questions affecting only individual members of the Class and the

Sub-Class, and, in fact, the wrongs suffered and remedies sought

by Plaintiff and the other members of the Class and Sub-Class are

premised upon an unlawful scheme participated in by all

Defendants.  The principal common issues include, but are not

limited to the following:

      a.     Whether Defendants' conduct deprived and/or deprives Class and the Sub-Class members of rights guaranteed under the United States Constitution and the Hawaiʻi State Constitution;

      b.     Whether Defendants' conduct deprived and/or deprives Class and the Sub-Class members of their legal rights under other applicable Federal and State laws;

      c.     Whether Plaintiff, the Class, and the Sub-Class members are entitled to declaratory relief;

      d.     Whether the Class and Sub-Class members are entitled to injunctive relief;

      e.     The nature of such injunctive relief; and

      f.     Whether punitive damages are appropriate.

69.  Plaintiff's claims are typical of those suffered by the Class

and the Sub-Class and are based on the same legal and factual

theories.  The entire Plaintiff Class and Sub-Class will benefit from

the injunctive and declaratory relief sought.

70.    Plaintiff will fairly and adequately represent and protect the interests of the Class and the Sub-Class.  She has suffered injury in her own capacity from the practices complained of and is ready, willing, and able to serve as class representative.  Moreover, Plaintiff's counsel is experienced in handling class actions and actions involving prisoners' civil rights litigation.  Neither Plaintiff nor her counsel has any interest that might cause them not to vigorously pursue this action.

71.    Certification of a plaintiff class under Fed. R. Civ. P. 23(b)(3) is appropriate because common questions of law or fact predominate over any question affecting only individual Class and Sub-Class members, and a Class action is a superior judicial mechanism for achieving the fair and efficient adjudication of this controversy.  A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured by certification of the class. Moreover, the individual class members are unlikely to be aware of their rights and not in a position (either through experience or

financially or due to their custodial detention) to commence individual litigation against the Defendants.

72. Certification of a plaintiff class and sub-class under Fed. R. Civ. P. 23(b)(2) is also appropriate because Defendants have acted or refused to act on grounds that apply generally to the class and sub-class, so that final injunctive or correspondeing declaratory relief is appropriate respecting the class as a whole.

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. Section 1983: Cruel and Unusual Punishment Under the Eight Amendment of the United States Constitution)**

73. Plaintiff incorporates by reference the paragraphs above.

74. 42 U.S.C. §1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

75.     Defendants, through their policies, practices, acts, and omissions have and continue to exhibit deliberate indifference to the sexual and psychological harassment, abuse, and injuries of the Plaintiff and the Class members of female Detainees, in violation of the rights of these women, in custodial detention by the State, to be free from cruel and unusual punishment under the Eight Amendment of the United States Constitution.

76.     Defendants, through their policies, practices, acts and omissions have subjected and continue to subject the Plaintiff class of female custodial Detainees to the unnecessary and wanton infliction of pain, and emotional, psychological, and physical injury in violation of the Eighth Amendment of the United States Constitution.

77.     With deliberate indifference to the substantial risk of serious harm to the Plaintiff class, Defendants have failed to, among other things, train, assign, and supervise staff, resulting in the Plaintiff class being exposed to and victimized by psychological sexual abuse and harassment by employees of the State, to retaliation for reporting detention facility staff sexual psychological

misconduct to verbal abuse, and to violations of privacy in violation of the Eighth Amendment of the United States Constitution.

78.   With deliberate indifference to the substantial risk of serious harm to the Plaintiff class, Defendants failed to and continue to fail to appropriately investigate and act upon complaints of sexual psychological abuse and harassment at KCCC, thereby subjecting the Plaintiff class to ongoing psychological sexual abuse and harassment by staff, to retaliation for reporting staff misconduct, to verbal abuse, and to violations of privacy in violation of the Eight Amendment of the United States Constitution.

79.   With deliberate indifference to the substantial risk of serious harm to the Plaintiff class, Defendants failed to offer and provide constitutionally adequate mental health treatment to women Detainees within the custodial detention facility at KCCC, subjecting the Plaintiff class to serious emotional, psychological, and physical injury in violation of the Eighth Amendment of the United States Constitution.

80.   As a result thereof, Plaintiff and the Class members have been damaged in amounts to be shown at trial, and Defendants are liable for all the remedies available under Federal and State law,

including reasonable attorneys' fees and costs, interest, equitable and injunctive relief, and additional relief as this Court deems just and fair.

81.   In his unlawful treatment of Plaintiff and the Class members, Defendant Wagatsuma acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's rights under law, thereby necessitating the imposition of punitive and/or exemplary damages against Defendant Wagatsuma individually.

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. §1983: Violations of Due Process of Law Under the Fifth and Fourteenth Amendments of the United States Constitution)**

82.   Plaintiff incorporates by reference the paragraphs above.

83.   42 U.S.C. §1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

84.   By their policies, practices, omissions, and acts, Defendants subjected Plaintiffs and the Class members, specifically those individuals who were pre-trial Detainees at KCCC, to Defendants' unconstitutional, illegal, and punitive "mental health" practices and treatment, without due process of law, in violation of the Fifth and Fourteenth Amendments of the United States Constitution.   In turn, the Plaintiff class has suffered serious emotional, psychological, and physical injuries.

85.   As a result thereof, Plaintiff and the Class members have been damaged in amounts to be shown at trial, and Defendants are liable for all the remedies available under Federal and State law, including reasonable attorneys' fees and costs, interest, equitable and injunctive relief, and additional relief as this Court deems just and fair.

86.   In his unlawful treatment of Plaintiff and the Class members, Defendant Wagatsuma acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's rights under law, thereby necessitating the imposition of

punitive and/or exemplary damages against Defendant Wagatsuma individually.

## THIRD CLAIM FOR RELIEF
## (Negligence: Failure of Defendants to Properly Oversee and Supervise Mental Health Treatment/Services at KCCC)

87.   Plaintiff incorporates by reference the paragraphs above.

88.   Under the State and Federal Constitutions, the State of Hawai'i has an obligation to protect and honor the constitutional and other legal rights of individuals in custodial detention within its detention/prison facilities.  This obligation extends to ensuring that constitutionally adequate mental health care/treatment is not only provided to Detainees, but also that the State maintains responsible, accountable oversight and monitoring of mental health services that are provided within the Hawai'i custodial detention system, including KCCC.

89.   The State of Hawai'i has an unfortunate history of failing to adhere to its constitutional obligations to provide adequate, proper mental health care and medical treatment to Detainees.   As such, through previous legal action and court oversight, the State has been held to and should be clearly aware of the requirements

and protections necessary to provide constitutionally adequate mental health care and treatment to Detainees.

90.   Defendant Wagatsuma's actions, omissions, and practices against Plaintiff and the Class members described above serve no penological purpose, are grossly and offensively improper and illegal, and have no justifiable mental health or therapeutic basis.

91.   Defendants had actual and constructive knowledge of Defendant Wagatsuma's policies, practices, acts, and omissions against female inmates at KCCC.  Despite the State of Hawai'i's knowledge regarding Defendant Wagatsuma's policies, practices, acts, and omissions, the State has taken no legitimate, justifiable, or adequate actions to remedy the injuries and wrongs suffered by Plaintiff and the Class members.  As such, Defendants Wagatsuma and Espinda  breached their duty of reasonable care to Plaintiff and the Class by failing to protect Plaintiff and the Class and further, to supervise, monitor, and ensure that Plaintiff and the Class received constitutionally adequate mental health treatment/therapy

92.   Further, Defendants negligently: (a) disregarded the safety of Plaintiff and the Class and (b) failed to protect Plaintiff from harm.

93.   Specifically, Defendants were negligent and caused injury to Plaintiff and the Class as follows:

(a)   Defendants engaged in the negligent hiring, supervision, and retention of State employees who caused psychological harm and damage to female inmates in the State's custody, including Plaintiff;

(b)   Defendants negligently failed to properly train DPS employees working at KCCC;

(c)   Defendants negligently failed to properly and thoroughly investigate the LTS program and Wagatsuma's practices at KCCC;

(d)   Defendants negligently failed to reprimand DPS employees and prevent them from harming other female inmates in the custody of the State;

(e)   Defendants negligently managed the KCCC and their operations; and,

(f)     Defendants negligently and unreasonable failed to adopt and implement policies and procedures to supervise and care for female inmates in the the State's custody, and to prevent psychological harm and damage against female inmates in the State's custody, including Plaintiff.

94.   As a result of Defendants' foregoing acts, conduct and/or omissions, Plaintiff was detained in an unsafe environment and was pyschologically harmed and damaged as a result of her incarceration with the State.

95.   Defendants Wagatsuma and Espinda are not protected by qualified immunity and are liable to Plaintiff and the Class because these Defendants acted with malice and/or for an improper purpose.  In addition, Defendants endorsed or allowed a pattern or practice of conduct that created an unreasonably dangerous condition at KCCC which resulted in the deprivation of Plaintiff and the Class' right to a reasonably safe condition of confinement.

96.   As a result thereof, Plaintiff and the Class members have been damaged in amounts to be shown at trial, and Defendants are liable for all the remedies available under Federal and State law, including reasonable attorneys' fees and costs, interest, equitable

and injunctive relief, and additional relief as this Court deems just and fair.

97.   In his unlawful treatment of Plaintiff and the Class members, Defendant Wagatsuma acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's rights under law, thereby necessitating the imposition of punitive and/or exemplary damages against Defendant Wagatsuma individually.

**FOURTH CLAIM FOR RELIEF**
**(Intentional and Negligent Infliction of Emotional Distress)**

98.   Plaintiff incorporates by reference the paragraphs above.

99.   Defendants' acts, omissions, and/or conduct alleged above were extreme, deliberate, wanton, wilful, reckless, intentional, and unreasonable.

100.   By reason of the above acts, omissions, and/or conduct alleged above, Defendants intentionally inflicted emotional distress on Plaintiff and the Class.

101.   Under the State and Federal Constitutions, the State of Hawai'i has an obligation to protect and honor the constitutional and other legal rights of individuals in custodial detention within its

detention/prison facilities.  This obligation extends to ensuring that constitutionally adequate mental health care/treatment is not only provided to Detainees, but also that the State maintains responsible, accountable oversight and monitoring of mental health services that are provided within the Hawaiʻi custodial detention system, including OCCC.

102. As a result thereof, Plaintiff has been damaged in amounts to be shown at trial, and Defendants are liable to Plaintiff for all the remedies available under the law including reasonable attorneys' fees and costs, interest, equitable relief, and additional relief as this Court deems just and fair.

## FIFTH CLAIM FOR RELIEF
## (42 U.S.C. §1983: Violations of the Right to Freedom of Speech Under the First and Fourteenth Amendments of the United States Constitution)

103. Plaintiff incorporates by reference the paragraphs above.

104. 42 U.S.C. §1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

105. Defendants, through their policies, practices, omissions, and acts, subjected the Plaintiff class of female Detainees to retaliation for reporting Defendants' sexual psychological misconduct, humiliation, and harassment, in violation of their rights to freedom of speech and to seek redress of grievances under the First and Fourteenth Amendments to the United States Constitution.

106. As a result thereof, Plaintiff and the Class members have been damaged in amounts to be shown at trial, and Defendants are liable for all the remedies available under Federal and State law, including reasonable attorneys' fees and costs, interest, equitable and injunctive relief, and additional relief as this Court deems just and fair.

107. In his unlawful treatment of Plaintiff and the Class members, Defendant Wagatsuma acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the

imposition of punitive and/or exemplary damages against

Defendant Wagatsuma individually.

## SIXTH CLAIM FOR RELIEF
### (Violations of the Hawai'i State Constitution)

108.   Plaintiff incorporates by reference the paragraphs above.

By their policies, practices, acts, and omissions, Defendants

deprived Plaintiff and the Class of their rights under Article I, §2

(Rights of Individuals), §3(Equality of Rights), §5 (Due Process and

Equal Protection) §6 (Right to Privacy) and §12(Cruel and Unusual

Punishment) of the Hawai'i State Constitution, entitling Plaintiff

and the Class to all available remedies under the law.

109.   In his unlawful treatment of Plaintiff and the Class

members, Defendant Wagatsuma acted willfully, wantonly, and/or

with malice or with conscious and/or reckless indifference to

Plaintiff's equal rights under law, thereby necessitating the

imposition of punitive and/or exemplary damages against

Defendant Wagatsuma individually.

# **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiff, on behalf of herself and all members of the Class respectfully prays for a jury trial and judgment against the Defendants as follows:

a)      For an order certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3) and Fed. R. Civ. P. 23(b)(2), and appointing Plaintiff and her counsel, to represent the Class and directing that reasonable notice of this action be given to all other members of the Class as necessary and appropriate;

b)      Declare that the Defendants have violated Plaintiff and the Class members' rights under the United States Constitution;

c)      Declare that the Defendants have violated 42 U.S.C. Section 1983;

d)      Declare that the Defendants have committed negligence against Plaintiff and the Class;

e)      Declare that the Defendants have committed intentional and/or negligent infliction of emotional distress against Plaintiff and the Class;

f)      Declare that Defendants have violated Plaintiff's and the Class members' rights under the State of Hawai'i Constitution;

g)      Grant Plaintiff and the Class members compensatory damages against Defendants jointly and severally, in an amount to be proven at trial;

h)      Award Plaintiff and the Class members their costs of bringing of this action, including reasonable attorneys' fees and costs;

i)      That the Court enter an order granting Plaintiff and the Class a preliminary and permanent injunction restraining and enjoining Defendants from further acts of sexual psychological abuse, harassment, and the administration of improper unconstitutionally inadequate mental health treatment;

h)      That the Court award punitive damages against Defendant Wagatsuma as allowed by law; and

i)      That the Court grant such other and further relief as may

be fair and equitable.

DATED:  Honolulu, Hawai'i, December 4, 2017.

/s/ MARGERY S. BRONSTER
MARGERY S. BRONSTER
ROBERT M. HATCH
ANTHONY "T.J." QUAN
DANIEL G. HEMPEY

Attorneys for Plaintiffs
ALEXANDRIA GREGG
Individually and on Behalf of
All Others Similarly Situated